**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:24-cv-24039**

**JANE DOE**,

     Plaintiff,

vs.

**ROYAL CARIBBEAN CRUISES, LTD.,**
**a foreign corporation for profit,**

     Defendant.

_____/

***COMPLAINT FOR DAMAGES***
***AND DEMAND FOR JURY TRIAL***

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, JANE DOE, (hereinafter, "Plaintiff") by and through undersigned counsel, hereby sues Defendant, ROYAL CARIBBEAN CRUISES, LTD., a foreign corporation for profit, (hereinafter, "Defendant RCCL"). Plaintiff hereby seeks damages, demands a jury trial on all issues so triable, and in further support, alleges as follows:

**INTRODUCTION**

1.    This case stems from an extremely disturbing violation of privacy perpetrated aboard Royal Caribbean Cruise Lines' vessel, *Symphony of the Seas*. Hidden cameras, discreetly installed by a RCCL employee/crew member in what should have been the most secure and private spaces of various passengers' staterooms, were used to secretly record guests, including the Plaintiff, without their consent or knowledge, during their most intimate moments and states of undress.

2.    On January 21, 2024, Plaintiff embarked on what she believed would be a luxurious vacation aboard the *Symphony of the Seas*. Instead, her journey was marred by the harrowing

discovery that she had been a target in a perverted video voyeurism scheme. What was meant to be a peaceful escape turned into a devastating breach of the Plaintiff's privacy, shattering her dignity and trust, and leaving her emotionally scarred and traumatized.

3.      Upon the discovery of the hidden cameras placed in various passengers' private quarters, a criminal investigation ensued which confirmed that Plaintiff was, in fact, a victim of video voyeurism while on her voyage, having been found on secret recordings, taken without her knowledge, in various stages of undress, within the privacy of her stateroom and bathroom. The realization that such videos existed, taken without her consent, along with having to confront the unspeakable images of herself, filmed in the supposed safety of her private bathroom without her knowledge, has caused her profound and irreparable emotional harm.

4.      The Plaintiff was further horrified to learn that this shocking invasion of her privacy was orchestrated by her own personal stateroom attendant, ARVIN JOSEPH MIRASOL, (hereinafter, "MIRASOL,") an individual entrusted by Defendant RCCL with unfettered access to the Plaintiff's private quarters and tasked with maintaining her stateroom throughout her voyage.

5.      Instead, MIRASOL violated the Plaintiff's most basic expectation of privacy by secretly filming her in the nude in her most intimate and private of settings – her stateroom's private bathroom.

6.      In the wake of his subsequent arrest, MIRASOL confessed to his depraved and predatory actions and admitted to installing hidden cameras, for his own voyeuristic and sexual gratification, in the very staterooms and private bathrooms he was supposed to maintain.

7.      MIRASOL further admitted that he meticulously selected which targets to record for his own illicit, sexual pleasure.

8.      MIRASOL's deviant actions amounted to a calculated and malicious invasion of privacy, intentionally inflicting deep emotional damages on those affected, including the Plaintiff.

9.      Royal Caribbean's promise of an idyllic opportunity to "make the most out of every moment" became a nightmare for the Plaintiff. Instead of disembarking with cherished memories of sun-soaked days and carefree relaxation, the Plaintiff was left carrying the unbearable weight of emotional torment, humiliation, and unrelenting mental anguish that will forever shadow her life.

10.     As a direct and proximate result of the actions of RCCL's employee MIRASOL, Plaintiff has suffered long-lasting damage to her mental health, requiring extensive treatment and therapy and the continued incurrence of medical expenses.

## THE PARTIES

11.     Plaintiff is a resident of Kalaheo, Hawaii, is over the age of eighteen (18) years, and is otherwise *sui juris.*

12.     Defendant RCCL is a for-profit corporation, engaged in and doing business in Miami-Dade County, Florida, with its worldwide headquarters, principal address, and principal place of business located at 1050 Caribbean Way, Miami, Florida 33132.

13.     Defendant RCCL is a common carrier engaged in the business of marketing, selling, and operating a cruise line out of various ports within the continental United States, including its home port in Miami, Florida.

14.     Defendant RCCL derives substantial revenues from cruises originating and terminating in various ports in the State of Florida, and in the U.S. Southern District of Florida.

15.     At all times material, Defendant RCCL was the bareboat charterer of a seafaring passenger vessel and cruise ship named, the *Symphony of the Seas*.

3

16.     On or about January 21, 2024 through January 27, 2024, Defendant RCCL owned, operated, managed, maintained, supervised, chartered, and/or controlled the vessel *Symphony of the Seas*, with a home port in Miami, Florida.

## JURISDICTION AND VENUE; GOVERNING LAW

17.     This is a civil action for damages in excess of this court's minimal jurisdiction requirements of $75,000.00 (Seventy-Five Thousand Dollars) exclusive of costs, attorney's fees, and interest, and is within the diversity jurisdiction of this court pursuant to 28 U.S.C. §1332.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant RCCL resides in this District and is engaged in and doing business in Miami-Dade County, Florida, with its worldwide headquarters, principal address, and principal place of business located at 1050 Caribbean Way, Miami, Florida 33132.  Furthermore, pursuant to the passenger-ticket contract issued to Plaintiff by Defendant RCCL, the Plaintiff is forced to file this lawsuit in the venue and forum mandated by Defendant RCCL (See Exhibit A - Passenger Ticket-Contract).

19.     Maritime law is the substantive law to be applied when the wrong complained of occurs in navigable waters, however, this court is free to apply Florida law where it neither conflicts with nor disturbs the uniformity of maritime law. *S.C. Loveland, Inc. v. East West Towing, Inc., 608 F.2d 160 (5th Cir. 1979); Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40, 41 n. 2 (S.D. Fla.), affirmed, 808 F.2d 60 (11th Cir. 1986).*

20.     In the absence of a well-defined body of maritime law relating to a particular claim, general maritime law may be supplemented by either state law or common law principles.  *Wells v. Liddy, 186 F.3d 505, 525 (4th Cir. 1999)*

## GENERAL ALLEGATIONS - FACTS OF THE INCIDENT

21.     Defendant RCCL conducted, operated, and/or chartered a passenger cruise through the Caribbean aboard the *Symphony of the Seas* which departed Port Everglades on January 21st, 2024, and returned on January 27th, 2024.

22.     On or about January 21, 2024, through January 27th, 2024, Defendant RCCL, acting through its agents, employees, servants, and affiliates invited the general public, including Plaintiff, to become passengers aboard the vessel *Symphony of the Seas* in exchange for monetary compensation.

23.     Plaintiff was a fare-paying passenger aboard the *Symphony of the Seas* from January 21, 2024, through January 27th, 2024.

24.     At all times material, MIRASOL was acting as an employee, agent, servant, and/or person otherwise authorized to act on behalf of Defendant RCCL, in that:

  a.     MIRASOL was employed by Defendant RCCL during the entirety of the Plaintiff's sailing aboard the RCCL vessel *Symphony of the Seas*;

  b.     MIRASOL was hired to work as a stateroom attendant on board the RCCL vessel *Symphony of the Seas*;

  c.     MIRASOL was paid a salary and/or other employment related benefits directly by Defendant RCCL for the work he was hired to perform;

  d.     MIRASOL was considered to be a member of the *Symphony of the Seas'* crew;

  e.     MIRASOL was required to wear a uniform or other insignia furnished by Defendant RCCL;

  f.     MIRASOL was under the command of the *Symphony of the Seas'* superior officers;

  g.     MIRASOL was subject to the *Symphony of the Seas'* discipline and Master's orders; and

h.      MIRASOL was subject to the right of control by Defendant RCCL.

25.     MIRASOL began his employment as a stateroom attendant aboard the *Symphony of the Seas* in December 2023, tasked by Defendant RCCL with cleaning and servicing guests' staterooms and bathrooms daily. However, while fulfilling his duties to his employer, MIRASOL perpetuated a video voyeurism scheme which victimized multiple adult and minor passengers, outrageously violating of the trust placed in Defendant RCCL, and in turn, its crew members and employees, by its fare-paying passengers, including the Plaintiff.

26.     On or about February 26, 2024, Defendant RCCL notified law enforcement that one of their employees, a stateroom attendant abord the *Symphony of the Seas* later identified as ARVIN JOSEPH MIRASOL, had placed hidden cameras in the very staterooms and bathrooms Defendant RCCL assigned him to service.  These cameras illicitly recorded various passengers without their knowledge or consent, including the Plaintiff, during their most intimate moments and in varying states of undress.

27.     On March 3rd, 2024, after the *Symphony of the Seas* docked at Port Everglades, law enforcement officers boarded the vessel and confronted MIRASOL, who voluntarily relinquished multiple electronic devices, including an Android cell phone, a Sandisk Micro S.D. memory card, a Transcend 8GB memory card, a Sandisk USB drive, and an Apple Watch.

28.     A preliminary review of the contents of each device revealed numerous videos of unsuspecting adult and minor passengers in the nude, including the Plaintiff, while in their private staterooms and bathrooms.  The videos were taken over the course of various sailings aboard the *Symphony of the Seas* and were made without the victims' knowledge or consent.

29.      After being detained and waiving his *Miranda* rights, MIRASOL voluntarily admitted to intentionally and deliberately affixing a hidden video camera in various guests' private

bathrooms while servicing their staterooms during the time they were aboard and sailing on the *Symphony of the Seas*.

30.     During his confession and recounting of his egregious misconduct, MIRASOL explained that he repeatedly hid a discrete camera in various guests' bathrooms for his own sexual gratification, stating that he would later return to the guests' staterooms, retrieve the camera, view the illicit footage, and use them to "pleasure himself and masturbate." MIRASOL further stated, "I want to control it, but I can't."

31.     MIRASOL further admitted to law enforcement that he selected which guest bathrooms to install hidden cameras based on whether he "liked" the passenger in the stateroom, specifically targeting female passengers approximately 16 years of age and older. This discriminatory and calculated selection process only further underscores the outrageous and intentional nature of MIRASOL's misconduct.

32.     In addition to illicitly installing hidden cameras in guests' private bathrooms without their knowledge or consent, MIRASOL also admitted that he would secretly enter guests' staterooms while they were showering and hide under their beds to record them in the nude without their knowledge or consent.   MIRASOL's conduct, carried out with deliberate intent and stealth, represents a gross violation of privacy and an extraordinary breach of personal security and safety.

33.     Throughout the duration of Plaintiff's voyage, RCCL assigned MIRASOL to maintain and service her stateroom, granting him unrestricted access to her personal quarters. This access was provided to MIRASOL by Defendant RCCL without limitation, allowing MIRASOL continual entry to the Plaintiff's stateroom at any time, with or without her knowledge or consent.

34.     On multiple occasions, MIRASOL physically interacted and made contact with the Plaintiff within her stateroom, including shaking her hand and physically handing her various

items for her stateroom.  These physical interactions occurred while his hidden camera was actively installed in her private bathroom, amplifying the impact and outrageousness of MIRASOL's misconduct.

35.     On or about April 25, 2024, Plaintiff was contacted by Detective So Hyon Kim of the Broward Sheriff's Office Special Victim's Unit and informed her of the investigation into MIRASOL's video voyeurism scheme.  Plaintiff was advised that she was identified as a potential victim, as she had been assigned to a stateroom serviced by MIRASOL during her sailing aboard the *Symphony of the Seas*.

36.     Plaintiff was requested to provide law enforcement with specific identifying information in order to confirm her identity as one of the victims who had been unknowingly recorded by MIRASOL, including photographs of clothing, jewelry, and visible tattoos or piercings she owned and/or had with her during her cruise on the symphony of the seas.

37.     Detective Kim later presented the Plaintiff with video evidence, confirming that she had indeed been recorded by MIRASOL's hidden camera while nude in her stateroom and private bathroom, without her knowledge or consent. The trauma and humiliation of viewing these videos, which captured the Plaintiff in her most vulnerable and intimate moments, coupled with the knowledge that other people have watched these videos, has caused the Plaintiff lasting emotional and psychological harm.

38.     As a direct and proximate result of Defendant RCCL's actions, by and through the egregious misconduct of RCCL's employee and crew member, ARVIN JOSEPH MIRASOL, Plaintiff has suffered severe emotional distress, mental anguish, loss of dignity, mental impairment and disability, debilitating humiliation and anxiety, continuous loss of sleep, overwhelming depression and sadness, panic attacks, digestive problems, irritable bowel syndrome, muscular

impairment, the loss of capacity for the enjoyment of life, inconvenience, and lost wages in the past and earning capacity in the future.

39.     As a direct and proximate result of Defendant RCCL's actions, by and through the egregious misconduct of RCCL's employee and crew member, MIRASOL, Plaintiff has been forced to seek professional medical treatment and therapy to cope with the ongoing trauma resulting from these outrageous acts.  The emotional toll of these violations continues to affect her daily life and mental health, as well as her personal and professional relationships, and she will require ongoing medical care to address the significant psychological harm she has endured. Plaintiff has incurred necessary medical expenses for her treatment and will continue to incur medical expenses in the future.

**COUNT I:**
**STRICT LIABILITY; INVASION OF PRIVACY CLAIM AGAINST DEFENDANT**
**RCCL**

Plaintiff hereby incorporates by reference, as though fully set forth herein, Paragraphs 1 through 39, and alleges as follows:

40.     Maritime law is the substantive law to be applied when the wrong complained of occurs in navigable waters, however, this court is free to apply Florida law where it neither conflicts with nor disturbs the uniformity of maritime law. *S.C. Loveland, Inc. v. East West Towing, Inc., 608 F.2d 160 (5th Cir. 1979); Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40, 41 n. 2 (S.D. Fla.), affirmed, 808 F.2d 60 (11th Cir. 1986).*

41.     Under Maritime law, common carriers, like Defendant RCCL, are strictly liable for the willful misconduct of its employees, including crimes committed by crew members against passengers.  *Garcia v. Carnival Corp, 838 F.Supp.2d 1334, 1337 (S.D. Fla 2012); See also New Orleans & N.E.R. Co. v. Jopes, 142 U.S. 18, 26, 12 S.Ct. 109, 112, 35 L. Ed. 919 (1891) ["The carrier is liable for every conceivable wrongful act done to a passenger by its train[ed] hands and*

*other employees while they are engaged in transporting him, no matter how willful and malicious the act may be, or how plainly it may be apparent from it nature that it could not have been done in furtherance of the carrier's business."]*

42.     Passengers of common carriers are entitled to "protection against the misconduct or negligence of the carrier's servants." *New Jersey Steam-Boat Co. v. Brockett, 121 U.S. 637, 645, 7 S. Ct. 1039, 1041, L.Ed 1049 (1887).*

43.     A common carrier undertakes absolutely to protect its passengers against the misconduct or negligence of its own servants.  *New Orleans & N.E.R. Co. v. Jopes, 142 U.S. 18, 12 S.Ct. 109, 35 L. Ed. 919 (1891); see also Doe v. Celebrity Cruises, Inc., at 905. [noting that in terms of tort liability, this becomes in effect, a special non-delegable duty owed by the carrier to the passenger.]*

44.     It is a fundamental principle of maritime law that a "maritime carrier has unconditional responsibility for the misconduct of its people towards the passengers." *Muratore v. M/S Scotia Prince, 656 F. Supp. 471 (D.ME. 1987), affirmed, 845 F.2d 347, 353 (1st Cir. 1988)*

45.     Courts have previously held that the liability of a common carrier to his passengers for the wanton and willful acts of its employees, even if committed outside the scope of employment, is of a "most stringent character, far greater than that of ordinary employers for the actions of its employees." *New Orleans & N.E.R. Co. v. Jopes, 142 U.S. at 26, 27; 12 S. Ct. at 112.*

46.     Additionally, Florida law also holds common carriers responsible for the "willful misconduct of its employees during the entire contractual period, notwithstanding the fact that the employee's actions fall outside the scope of employment." *Nadeau v. Costley, 634 So.2d 649 (Fla.Dist.Ct.App. 1994); See also Commodore Cruise Line, Ltd. v. Kormendi, 344 So.2d 896, 898*

*(Fla. 1977) [noting that this duty [of care and vigilance to passenger safety] extends to the carrier's employees "and any willful misconduct by its employees are actionable as against the carrier-employer."]*

47.     Holding common carriers strictly liable for the intentional torts of their crewmembers against passengers would prevent common carriers from effectively eliminating its duty to protect its passengers from those intentional torts through the use of "creative, carefully drafted contractor and subcontractor agreements." *Doe (T.C) v. Celebrity Cruises, Inc., 389 F.Supp.3d 1109, 1117 (S.D. Fla. 2019)*

48.     Florida law recognizes three categories of invasion of privacy torts, one of which being the tort of "Intrusion," defined as "physically or electronically intruding into one's private quarters." Publication is not required for the tort of Intrusion, as the focus of the tort is nonetheless "the right of a private person to be free from public gaze." *Allstate Ins. Co. v. Ginsberg, 863 So.2d 156, 162 (Fla. 2003).*

49.     To constitute an invasion of privacy, the intrusion "must be highly offensive to a reasonable person." *Stoddard v. Wohlfahrt, 573 So.2d 1060, 1062-63 (Fla. 5th DCA 1991).*

50.     Florida law defines "video voyeurism" as the act a person commits, "for his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy." *Fla. Stat. § 810.145(2)(a)*

51.     Florida's Video Voyeurism statute defines a "place and time when a person has a reasonable expectation of privacy" as a "place and time when a reasonable person would believe

that they, he or she, could fully disrobe in privacy, without being concerned that the person's undressing was being viewed, recorded, or broadcasted by another, including but not limited to, the interior of a residential dwelling, bathroom, changing room, or tanning booth." *Fla. Stat. § 810.145 (1)(c).*

52.     MIRASOL voluntarily admitted to intentionally intruding on the Plaintiff's privacy by secretly placing hidden cameras in her private quarters and capturing her on video in the nude, without her knowledge or consent, for his own sexual pleasure. MIRASOL's outrageous conduct, carried out with deliberate intent and stealth, represents a gross violation of the Plaintiff's privacy and an extraordinary intrusion into the Plaintiff's private affairs by Defendant RCCL.

53.     Plaintiff, like any other passenger aboard a cruise ship, had a reasonable expectation of privacy in her private guest quarters while on board the *Symphony of the Seas.* Plaintiff's actions within the confines, solitude, and seclusion of her private stateroom and bathroom -- particularly those involving intimate and personal matters such as showering, dressing, or undressing -- were private affairs to which no intrusion was warranted. *Allstate v. Ginsberg, at 162.*

54.     MIRASOL's unwarranted and unconsented intrusion into Plaintiff's private affairs—specifically by secretly recording her without her knowledge while she was naked in her private quarters—was both grossly offensive and extremely humiliating to Plaintiff. Such an outrageous invasion of privacy is actionable as an intentional tort under both maritime principles and Florida law. *Nadeau v. Costly, at 653.*

55.     Defendant RCCL, as a common carrier, is strictly liable for MIRASOL's willful misconduct, including the outrageous acts of video voyeurism he admittedly committed against the Plaintiff while servicing her private quarters. *Garcia v. Carnival, at 1337. See also, Doe v. Celebrity Cruises, Inc., at 915-16.*

56.     The strict liability imposed on Defendant RCCL for the misconduct of its crewmember, MIRASOL, is recognized under both maritime and Florida law and extends to ensuring that passengers are not subjected to intentional torts or criminal actions committed by crew members. *Nadeau v. Costley, at 652.*

57.     MIRASOL's extreme and unauthorized intrusion into the Plaintiff's private life—secretly recording her while she was naked in the sanctity of her personal quarters—constitutes an atrocious and intolerable violation of her most basic expectations of privacy. Such a flagrant abuse of trust and decency far surpasses the limits of acceptable behavior and is nothing short of shocking and intolerable in any civilized society. This gross misconduct is the very embodiment of extreme and outrageous behavior.

58.     As a direct and proximate result of Defendant RCCL's actions, by and through the egregious misconduct and gross intrusion into the Plaintiff's privacy by RCCL's employee and crew member, MIRASOL, Plaintiff has suffered severe emotional distress, mental anguish, loss of dignity, mental impairment and disability, debilitating humiliation and anxiety, continuous loss of sleep, overwhelming depression and sadness, panic attacks, digestive problems, irritable bowel syndrome, muscular impairment, the loss of capacity for the enjoyment of life, inconvenience, and lost wages in the past and earning capacity in the future.

59.     As a direct and proximate result of Defendant RCCL's actions, by and through the egregious misconduct and gross intrusion into the Plaintiff's privacy by RCCL's employee and crew member, MIRASOL, Plaintiff has been forced to seek professional medical treatment and therapy to cope with the ongoing trauma and emotional distress resulting from these outrageous acts.  The emotional toll of these violations continues to affect her daily life, mental health, as well as her personal and professional relationships, and she will require ongoing medical care to address

the significant psychological harm she has endured. Plaintiff has incurred necessary medical expenses for her treatment and will continue to incur medical expenses in the future.

**WHEREFORE**, Plaintiff JANE DOE demands judgment against Defendant Royal Caribbean Cruises, Ltd. for damages in excess of this court's minimal jurisdictional requirement of $75,000.00, as well as attorney's fees and costs as allowed by law, pre-judgment and post-judgment interest as allowed by law, and demands a trial by jury of all issues so triable.

**COUNT II:**
**STRICT LIABILITY; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**CLAIM AGAINST DEFENDANT RCCL**

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 39, and alleges as follows:

60.     Under both maritime and Florida law, common carriers can be held vicariously liable for the tortious actions of a crew member, even when the victim suffers no impact or physical manifestation of injury.  *Nadeau v. Costley, at 653.*

61.     Courts sitting in admiralty typically look to the Restatement (Second) of Torts § 46 as well as state law to evaluate claims for intentional infliction of emotional distress.  *Wu v. NCL (Bahamas) Ltd., No. 16-22270, 2017 WL 1331712, at 2 (S.D. Fla. Apr. 11, 2017)*

62.     "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Restatement (Second) of Torts § 46 (1965)*

63.     Under Florida law, a claim for IIED consists of the following elements: "(1) the wrongdoer's conduct was intentional or reckless;… (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Garcia v. Carnival Corp., at 1339.*

14

64.     There is no authority for the proposition that physical injury or trauma is required to hold a carrier vicariously liable for the intentional actions of its employees. *Nadeau v. Costley, at 653.*

65.     Whether conduct is sufficiently "outrageous" to state a claim for IIED is a question of law for the Court to decide. *Id.*

66.     The Florida Supreme Court has previously found liability where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Garcia v. Carnival Corp., at 1339; See also Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985).*

67.     Florida courts have also upheld passenger claims for Intentional Infliction of Emotional Distress, ("IIED"), against common carriers as a result of the willful and outrageous misconduct of their employees, noting that "it is a fundamental principle of maritime law that a carrier has unconditional responsibility for the misconduct of its people towards the passengers." *Muratore v. M/S Scotia Prince, at 479; affirmed, 845 F.2d 347, 353 (1st Cir. 1988); See also Eisenman v. Carnival Corporation, 424 F.Supp.3d 1303, 1307 (S.D. Fla. 2019) [noting that "several cases from this district have allowed [claims] for "emotional distress that [are] not [for] the anguish of loss, but rather the anguish of the events leading to the loss as directly and personally experienced by the plaintiffs."]*

68.     Florida courts have further explained that holding common carriers strictly liable for the intentional torts of their crewmembers against passengers would prevent common carriers from effectively eliminating its duty to protect its passengers from those intentional torts through

the use of "creative, carefully drafted contractor and subcontractor agreements." *Doe (T.C) v. Celebrity Cruises, Inc., 389 F.Supp.3d 1109, 1117 (S.D. Fla. 2019)*

69.     Defendant RCCL, as a common carrier, is strictly liable for MIRASOL's willful misconduct, including the extreme and outrageous acts of video voyeurism he admittedly committed against the Plaintiff while servicing her private quarters.  *Garcia v. Carnival, at 1337. See also, Doe v. Celebrity Cruises, Inc., at 915-16.*

70.     The strict liability imposed on Defendant RCCL for the misconduct of its crewmember, MIRASOL, is recognized under both maritime and Florida law and extends to ensuring that passengers are not subjected to intentional torts or criminal actions committed by crew members. *Nadeau v. Costley, at 652.*

71.     MIRASOL, with deliberate malice and a total disregard for human decency, admitted to purposefully violating the Plaintiff's most intimate privacy by secretly placing hidden cameras in her private quarters. These cameras captured video footage of the Plaintiff in the nude, without her knowledge or consent, for MIRASOL's own perverse sexual gratification. This despicable and predatory conduct, executed with cunning stealth and premeditation, not only represents a brazen invasion of the Plaintiff's privacy but reveals MIRASOL's intent to inflict, or reckless indifference to the likelihood of inflicting, severe emotional trauma upon the Plaintiff.

72.     MIRASOL's extreme and unauthorized intrusion into the Plaintiff's private life—secretly recording her while she was naked in the sanctity of her personal quarters—constitutes an atrocious and intolerable violation of her most basic expectations of privacy. Such a flagrant abuse of trust and decency far surpasses the limits of acceptable behavior and is nothing short of shocking and intolerable in any civilized society. This gross misconduct is the very embodiment of extreme and outrageous behavior.

73.     As a direct and proximate result of Defendant RCCL's actions, by and through the outrageous misconduct and intentional acts of video voyeurism committed against the Plaintiff by RCCL's employee and crew member, MIRASOL, Plaintiff has suffered severe emotional distress, mental anguish, loss of dignity, mental impairment and disability, debilitating humiliation and anxiety, continuous loss of sleep, overwhelming depression and sadness, panic attacks, digestive problems, irritable bowel syndrome, muscular impairment, the loss of capacity for the enjoyment of life, inconvenience, and lost wages in the past and earning capacity in the future.

74.     As a direct and proximate result of Defendant RCCL's actions, by and through the outrageous misconduct and intentional acts of video voyeurism committed against the Plaintiff by RCCL's employee and crew member, MIRASOL, Plaintiff has been forced to seek professional medical treatment and therapy to cope with the ongoing trauma and emotional distress resulting from these outrageous acts.  The emotional toll of these violations continues to affect her daily life, mental health, as well as her personal and professional relationships, and she will require ongoing medical care to address the significant psychological harm she has endured. Plaintiff has incurred necessary medical expenses for her treatment and will continue to incur medical expenses in the future.

**WHEREFORE**, Plaintiff JANE DOE demands judgment against Defendant Royal Caribbean Cruises, Ltd. for damages in excess of this court's minimal jurisdictional requirement of $75,000.00, as well as attorney's fees and costs as allowed by law, pre-judgment and post-judgment interest as allowed by law, and demands a trial by jury of all issues so triable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, JANE DOE, demands a trial by jury on all claims set forth herein.

Dated: October 18th, 2024.

Respectfully Submitted,

**LEESFIELD & PARTNERS, P.A.**
*Attorneys for the Plaintiff*
2350 South Dixie Highway
Miami, FL  33133
Tel: 305-854-4900
Fax: 305-854-8266

By: _____*/S/ Bernardo Pimentel II, Esq.*_____

**JUSTIN B. SHAPIRO, ESQ.**
Florida Bar No. 92036
Primary service e-mail: shapiro@leesfield.com
Additional service e-mail: alpizar@leesfield.com

**BERNARDO PIMENTEL II, ESQ.**
Florida Bar No. 1014210
Primary service e-mail: pimentel@leesfield.com
Additional service e-mail: gonzalez@leesfield.com